# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| In re: )<br>)<br>JULIE MARIE WOOD )<br>)<br>　　　　Debtor )<br>) | CASE NO. 18-32555 |
| MICHAEL WHEATLEY, )<br>　　　　Plaintiff )<br>v )<br>JACK D. WOOD, JENNIFER D. WOOD, and )<br>MARGARET WOOD )<br>　　　　Defendant ) | A. P. NO. 19-3041 |

## MEMORANDUM

　　This case comes before the Court on the Motion for Partial Summary Judgment filed by the Plaintiff, Michael Wheatley ("Plaintiff" or "Trustee").  This action concerns the avoidance and recovery of certain prepetition transfers of property belonging to the Chapter 7 bankruptcy estate of the debtor, Julie Marie Wood ("Debtor").  The Trustee has alleged that Jack Wood ("Jack"), Margaret Wood, and Jennifer Wood ("Jennifer") (collectively the "Defendants") were recipients of avoidable prepetition transfers of estate property.  The Trustee has filed this summary judgment motion alleging that the undisputed facts, based upon sworn testimony, pleadings, and admissions, establish that the Trustee is entitled to judgment as a matter of law.  Trustee further requests that the Court set this adversary proceeding for an evidentiary hearing on the sole issue of the value of the Debtor's 20% ownership interest in a family owned real estate business (the "Joint Venture").  The Defendants oppose the Motion for Summary Judgment.

## PROCEDURAL HISTORY

On August 21, 2018, the Debtor voluntarily filed the above-captioned Chapter 7 bankruptcy case. On November 14, 2018, Debtor filed a Motion to Convert from Chapter 7 to Chapter 13, which received objections from the Trustee and Janice Gerstenecker, Debtor's only creditor ("Gerstenecker"). After conducting an evidentiary hearing on April 23, 2019, the Court denied Debtor's Motion to Convert, finding that the Debtor had not met the burden of showing her eligibility for Chapter 13 and for lack of good faith.

On December 2, 2019, Trustee filed a Complaint seeking to avoid and recover property of the estate. Trustee presented six causes of action which he asserted entitled him to either avoid or recover Debtor's property that was transferred to the Defendants, whom the Trustee characterized as insiders. Specifically, prior to the Petition Date, the Trustee alleged that the Defendants received at least $47,701.28 from Debtor's bank accounts and an unknown amount from the unilateral termination of the Debtor's 20% interest in the Joint Venture.

On February 7, 2020, nine weeks after the Complaint was served, Defendants filed a Motion for Leave to File Answer, which the Court granted on March 11, 2020. One collective answer was filed on behalf of Defendants (the "Answer"). Notably, the Defendants admitted more than half of the factual allegations presented in the Complaint. The Defendants did not assert any affirmative defenses to any of Trustee's claims in the Answer.

On January 8, 2021, the Trustee filed a Motion to Approve Settlement Agreement, wherein he sought Court authority to settle the dispute with the Defendants. Gerstenecker opposed the motion. After conducting an evidentiary hearing on the matter, on August 17, 2021, the Court entered a Memorandum Opinion and Order denying approval of the Settlement Agreement. In that Memorandum, the Court found that the Defendants had admitted that the Debtor owned a 20%

interest in the real estate Joint Venture with the Defendants. This conclusion was supported by the Answer, Jack Wood's sworn testimony at the hearing on the Motion to Convert, and by the Debtor's tax returns, wherein she claimed a deduction for the Joint Venture's losses in order to reduce her amount of taxable income tax. Based upon this conclusion, the Court would not approve the Trustee's proposed settlement that would recover nothing for the only creditor.

Based in part on the August 17, 2021 Memorandum, the Trustee has now moved for partial summary judgment. The Trustee seeks to recover transfers related to the Debtor's bank accounts and the Debtor's 20% interest in the real estate Joint Venture. As stated above, the Defendants oppose the Motion.

## JURISDICTION

The subject matter jurisdiction of bankruptcy courts is set forth in 28 U.S.C. § 1334(a). Bankruptcy courts have jurisdiction to hear all cases under title 11 of the United States Code (the Bankruptcy Code) and all claims arising thereunder. 28 U.S.C. §§ 157(b) and 1334. These "arising under" claims are referred to as "core" proceedings and "either invoke[ ] a substantive right created by federal bankruptcy law or ... could not exist outside of the bankruptcy." *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002) (internal quotation marks and citations omitted). Core proceedings include matters concerning the administration of the bankruptcy estate, actions to determine, avoid, and recover preferences, actions to determine, avoid, and recover fraudulent conveyances, and actions to turn over property of the estate. 28 U.S.C. §§ 157(b)(2)(A), (E), (F) and (H).

## UNDISPUTED FACTS

**I.    Bank Accounts**

The Defendants are all family members of the Debtor. Jack is Debtor's father; Margaret is

Debtor's mother; and Jennifer is Debtor's sister. Consequently, the Defendants are insiders of Debtor, as that term is defined in the Bankruptcy Code. 11 U.S.C. § 101(31)(A)(i).

When Debtor was a minor, Jack opened several Branch Banking and Trust Company ("BB&T") bank accounts that were titled in Debtor's name with Jack identified as the custodian. In 2007, Jack, Jennifer, and Debtor opened jointly titled bank accounts with PNC Bank, N.A. ("PNC"). The bank accounts with PNC and BB&T were funded, in part, by tax refunds issued to Debtor.

Debtor was married to Adam Gerstenecker from 2012 until their divorce in 2015. In 2014, Gerstenecker, Adam's mother, loaned Debtor approximately $78,444.02 to repay her student loans. When Debtor defaulted on the loan, Gerstenecker sought and obtained a judgment in Alabama state court, which Debtor appealed to the Alabama Supreme Court. The Alabama Supreme Court affirmed Debtor's liability to Gerstenecker but reversed the damage award and remanded the case with instructions for the trial court to bifurcate the amount unpaid from the amount paid. In September of 2017, the state trial court entered a final judgment against Debtor (the "Alabama Judgment").

On August 21, 2017, one month before entry of the final Alabama Judgment and exactly one year prior to the Petition Date, Jack and Jennifer closed all jointly held bank accounts bearing Debtor's name. At the time of the closing, and within the one-year period prior to the Petition Date, Debtor possessed an interest in these closed accounts. The combined balances as of the date the accounts were closed totaled $47,701.28.

The BB&T and PNC accounts were closed to prevent Gerstenecker from obtaining those funds to satisfy the Alabama Judgment. Debtor was aware of the accounts, was a signatory on those accounts, and had checks issued in Debtor's name for those accounts.

Jack and Jennifer created three new accounts at PNC. The balances of the closed accounts were transferred to accounts at PNC titled in the names of only Jack and Jennifer. The only difference between the former accounts and the newly created accounts is that the Debtor's name was removed as an accountholder.

Debtor did not receive any funds from either the BB&T accounts or the PNC accounts. Despite being aware of the accounts, the Debtor did not report the closed accounts in her initial bankruptcy petition, nor did she disclose the closed accounts at the 341 Meeting of Creditors.

**II.  Joint Venture**

The Debtor and the Defendants were joint owners in a Joint Venture, which owned numerous pieces of real and personal property located near and around Jefferson County Kentucky. Jack completed Debtor's federal income tax returns for 2015, 2016, 2017, and 2018. Debtor's 2016 federal income tax return reflects a $44,012 loss of income resulting from losses incurred by the Joint Venture. During the evidentiary hearing on the Debtor's Motion to Convert, Jack testified that Debtor possessed a 20% interest in the Joint Venture, with he and the other Defendants owning the remaining 80% interest in the Joint Venture.

Sometime after the 2016 Tax Return was filed, Jack unilaterally decided to remove Debtor from the Joint Venture. Debtor's 2017 Tax Return, filed on August 20, 2018 (one day prior to the petition date), does not reflect any business interest.

Debtor was not compensated for the termination and transfer of her 20% interest in the Joint Venture. Indeed, the Debtor received nothing for the loss of her 20% interest in the Joint Venture.

Debtor did not disclose her interest in the Joint Venture in her bankruptcy petition or at the 341 Meeting of Creditors.

In its August 17, 2021, Memorandum and Opinion, this Court made the following relevant factual findings:

> Debtor owned a 20% interest in a real estate venture with her parents and sister (the "Joint Venture"). With this ownership interest, the Debtor was able to claim the Joint Venture's business losses to offset her income on her federal income taxes. Doing so resulted in the Debtor paying little to no income taxes for several years. When asked about the Joint Venture, the Debtor claimed no knowledge, which was consistent with her testimony to the majority of questions asked of her.
>
> Jack Wood testified under oath regarding the Debtor's tax returns and deductions. He responded "Yes, that was a joint venture between my wife, myself, Jennifer, and [the Debtor]." Later, he was specifically asked "Is the business a joint venture?" To which, Jack Wood responded "Yes."
>
> Jack Wood also testified that, after problems developed between the Debtor and Gerstenecker, he decided he did not want the Debtor to continue in the Joint Venture. Consequently, he unilaterally removed the Debtor from the Joint Venture. He further stated that he did not discuss removing the Debtor from the Joint Venture prior to taking those actions. Later during his testimony, when asked by the Court to clarify the notations on the Debtor's tax returns reflecting percentages between the Defendants and the Debtor, Jack Wood testified that the handwritten notations were the "division of the joint venture."
>
> ***
>
> Following the evidentiary hearing, on May 15, 2019, the Court entered its Memorandum and Order denying the Debtor's Motion to Convert. In its ruling, the Court cited to the Debtor's tax returns, wherein she claimed a 20% interest in the Joint Venture. The Court further found that Jack Wood confirmed this ownership interest of the Debtor in the Joint Venture. The Court also found that the Debtor was divested of this interest as a result of a unilateral decision of Jack Wood. The Debtor received nothing in return for giving up her interest in the real estate business. Mr. Wood did not feel the Debtor was entitled to any compensation for removing the Debtor from the Joint Venture.
>
> ***

> Jack Wood, pro se and as Counsel for Margaret and Jennifer Wood, filed an answer on February 7, 2020. In that answer, the Defendants admitted the allegations of paragraphs 33-36 [of Trustee's Complaint], among others. In other words, the Defendants confirmed what was testified to at the evidentiary hearing on the Motion to Convert — that the Debtor owned a 20% interest in the Joint Venture. The Defendants denied the allegation in ¶37, that the Debtor was not compensated for the termination of her interest. The meaning being that the Defendants asserted the Debtor was compensated for her interest.

*Wheatley v. Wood (In re Wood)*, Nos. 18-32555, 19-3041, 2021 Bankr. LEXIS 2231, at * 4-9 (Bankr. W.D. Ky. Aug. 17, 2021).

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the Court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the

nonmoving party. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996). Absent such evidence from the nonmoving party in a motion for summary judgment, the Court need not comb the entire record to determine if any of the available evidence could be construed in such a light. *See In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001) (holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact").

## ANALYSIS

### I. Count I: Avoidance and Recovery of Bank Transfers Under § 544(b)

As stated above, the Trustee seeks to avoid these prepetition transfers as either preferential transfers or as fraudulent transfers. In Count I of the Complaint, Trustee seeks avoidance of the bank transfers to the Defendants by exercising his "strong arm" powers under § 544(b)(1), which authorizes a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title . . . ." 11 U.S.C. § 544(b)(1).

To avoid a transfer under § 544(b)(1), "the trustee must prove by a preponderance of the evidence that there is '(1) [a] creditor, (2) holding an allowable unsecured claim; and (3) a transfer of an interest of the debtor in property, (4) that is voidable under applicable [state] law.'" *Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 330 (B.A.P. 6th Cir. 2007). "Essentially, this provision permits the trustee to 'stand in the shoes' of an unsecured creditor and assert causes of action under state fraudulent conveyance laws for the benefit of all creditors." *Spradlin v. E. Coast Miner, LLC (In re Licking River Mining, LLC)*, 603 B.R. 336, 364 (Bankr. E.D. Ky. 2019). In this case, the Trustee is "standing in the shoes" of Gerstenecker, an undisputed creditor of the Debtor.

As for the first two elements, Gerstenecker received the final Alabama Judgment on September 11, 2017. By virtue of the Alabama Judgment, Gerstenecker is an unsecured judgment creditor holding an allowable claim under § 502. The transfers from the bank accounts occurred on August 21, 2017. Thus, Gerstenecker was a creditor holding an allowable unsecured claim at the time the transfers were made.

With respect to the third element, there is no question that the transfer was a transfer of an interest of the debtor in property. The Debtor owned an interest in the bank account funds. To some degree, the bank accounts were funded by the Debtor's tax refunds. While the Defendants, and specifically Jack and Margaret Wood, may have been the source for the other funds, the Debtor had access to all of the funds and, on occasion, used the funds to pay her personal debts.

Turning to the fourth element, the Trustee must establish that the transfer is voidable under state law. Under the Kentucky Uniform Voidable Transactions Act, a transfer is voidable as to a creditor whose claim arose prior to the transfer if: (1)(a) debtor did not receive reasonably equivalent value in exchange for the transfer and (b) the debtor was at the time or became insolvent as a result of the transfer; or (2) the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe the debtor was insolvent. KRS § 378A.050(1), (2).

Here, the transfers from the bank accounts qualify under either section of § 378A.050. First, under § 378A.050(1), Gerstenecker's claim arose prior to the transfer. The Debtor did not receive reasonably equivalent value. Indeed, the Debtor received nothing from the transfer of these assets.

There can also be no question as to the Debtor's solvency at the time the transfers were made. Debtor possessed no other material assets, and, as shown in her original bankruptcy schedules, the

Debtor's monthly expenses exceeded her income by over $981. Debtor was insolvent at the time the transfers were made.

With the findings of insolvency and no reasonably equivalent value, the Trustee has satisfied the requirements of § 378.050(1). The Court also finds that the requirements of § 378.050(2) are also met.

Jack and Jennifer are family members of the Debtor and qualify as insiders. The Defendants admitted in their answer that the transfers were made on account of an antecedent debt. As stated above, the Debtor was insolvent at the time of the transfers. Because Jack completed Debtor's 2016 and 2017 Tax Returns, he was familiar with her financial situation. As such, the Defendants were intimately aware of the Debtor's financial insolvency.

The Court concludes the Trustee is entitled to summary judgment on Count I of his complaint, avoiding the transfers from the bank accounts under § 544(b).

## II. Avoidance of Preferential Bank Transfers Under § 547

Count II of the Complaint seeks to avoid and recover the preferential bank transfers made to insiders under § 547. In an action based upon § 547, the "Plaintiff bears the burden of proving by a preponderance of the evidence each element of a preferential transfer under § 547(b)." *In re Nelson*, 419 B.R. 338, 340 (Bankr. W.D. Ky. 2009) (citing § 547(g)). Section 547(b) allows a trustee to avoid any preferential transfer of an interest of the Debtor's property. "To qualify as a voidable preference, a transfer must '(1) benefit a creditor; (2) be on account of antecedent debt; (3) be made while the debtor was insolvent; (4) be made within 90 days before bankruptcy [or one year if transfers were to insiders]; and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made.'" *In re Carled, Inc.*, 91 F.3d 811, 813 (6th Cir. 1996) (*quoting*

*Union Bank v. Wolas*, 502 U.S. 151 (1991)).

The Trustee alleges that the undisputed facts establish all the elements necessary to enable the Trustee to avoid the transfers from the bank accounts. The Court agrees. During the one-year period prior to the Petition Date, Debtor possessed an interest the funds in the closed bank accounts. Thus, the transfers to the insider Defendants were of an interest of the Debtor in property. The Defendants admitted these transfers were to a creditor on behalf on an antecedent debt in their answer. Jack and Jennifer transferred $47,701.28 from the bank accounts to newly created bank accounts jointly titled in their names. The Debtor's bankruptcy schedules evidence she was insolvent at the time of the transfers. Finally, these transfers allowed the Defendants to receive more than if the transfers had not been made. Thus, Trustee is entitled to avoid the bank transfers and recover from Defendants $47,701.28 under § 547(b).

### III. Avoidance of Bank Transfers Under § 548

Count III seeks avoidance of the bank account transfers under § 548. Under § 548 of the Bankruptcy Code, the Trustee may recover as a fraudulent transfer, any transfer made by a debtor within two years of the petition date, if the debtor:

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity . . .; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548. *See also In re Grove-Merritt*, 406 B.R. 778, 789 (Bankr. S.D. Ohio 2009). The Trustee asserts that the transfers of the bank accounts by the Debtor to the Defendant are subject to

11

avoidance as both actual fraudulent transfers, i.e. made with the actual intent to hinder, delay, or defraud creditors, and constructively fraudulent, i.e. for less than reasonably equivalent value. The Trustee has the burden of proof as to all the required elements of these claims. *Baumgart v. Bedlyn, Inc. (In re Empire Interiors, Inc.)*, 248 B.R. 305, 307 (Bankr. N.D. Ohio 2000).

To set aside the transfers of the Debtor's interests in the bank accounts as actual fraudulent transfers, the Trustee must show that the transfers were made with the "actual intent to hinder, delay or defraud" the Debtor's creditors. 11 U.S.C. § 548(a)(1)(A). Intent must be established by the lower preponderance of the evidence standard. "Because proof of actual intent to hinder, delay or defraud creditors may rarely be established by direct evidence, courts infer fraudulent intent from the circumstances surrounding the transfer." *Schilling v. Heavrin (In re Triple S. Rests., Inc.)*, 422 F.3d 405, 416 (6th Cir.2005). Such circumstances are reflected in the factors that are often referred to as the "badges of fraud." *Id.*

Unlike most cases, the Court does not need to look to badges of fraud. The Defendants admitted that the transfers were made to the avoid Gerstenecker's impending final judgment against the Debtor. This was admitted in both the Answer filed by the Defendants, and by Jack Wood in his testimony at the Motion to Convert. During the hearing on the Motion to Convert, Jack testified that the Debtor "received the judgment of the Supreme Court in Alabama" and "any account with her name on it was going to be garnished."

The Court finds that the Trustee has met his burden of showing that these transfers were made with fraudulent intent. Thus, the burden shifted to the Defendants to prove the absence of fraudulent intent and a legitimate purpose for the transfer of the funds. *Silagy v. Gagnon (In re Gabor)*, 280 B.R. 149, 157 (Bankr. N.D. Ohio 2002). The Defendants failed to meet this burden.

To set aside the transfers of the Debtor's interests in the bank accounts as constructively fraudulent, the Trustee must establish by a preponderance of the evidence that the Debtor received less than reasonably equivalent value in exchange for the challenged transfers and at least one of the following: a) the Debtor was insolvent at the time of the relevant transfer or became insolvent as result of the transfer; b) the Debtor was engaged in a business or a transaction for which her property remained unreasonably small in relation to the business or transaction; c) or the Debtor intended to incur, or believed or reasonably should have believed that she would incur debts beyond her ability to pay. 11 U.S.C. § 548(a)(1)(B); *In re Fordu*, 201 F.3d 693 (6th Cir. 1999). In determining whether a transfer is supported by reasonably equivalent value, courts generally compare the value of property transferred with that which is received in exchange for the transfer. *Id.* at 707.

The Court finds the Trustee has satisfied his burden with respect to this claim as well. Since the Debtor received nothing for these transfers, there is no question that she received less that reasonably equivalent value. Likewise, as stated above, the Debtor was insolvent at the time of the relevant transfers. The Debtor possessed no material assets and her income was insufficient to meet her regular expenses.

With these conclusions, the Court finds that summary judgment should be granted to the Trustee with respect to Count III as to the bank account transfers.

**IV.    Avoidance of Joint Venture Transfer Under § 548**

In Count IV, the Trustee seeks to avoid the transfer of the Debtor's ownership interest in the Joint Venture under § 548. As stated earlier, the Court has previously held, and the Defendants have admitted in their answer, that the Debtor was a 20% interest holder in the Joint Venture. This finding was further supported by the Debtor's tax returns, prepared by Jack Wood, wherein she

13

claimed losses on her income tax returns due to the Joint Venture.

As evidenced by the Debtor's 2016 tax return, the Debtor held a 20% interest in the Joint Venture. Between 2016 and 2017, the Debtor's interest in the Joint Venture was transferred to the Defendants. The Trustee now seeks to avoid this transfer as a fraudulent transfer under § 548. The same tests and analysis as set forth above regarding the bank accounts also applies to this transfer of the Debtor's interest in the Joint Venture.

Like the bank account transfers, this transfer of the interest in the Joint Venture qualifies as both an actual fraudulent transfer, i.e. made with the actual intent to hinder, delay, or defraud creditors, and a constructively fraudulent transfer, i.e. for less than reasonably equivalent value.

Like with the bank account transfers, to set aside the transfers of the Debtor's interests in the Joint Venture, the Trustee must show that the transfers were made with the "actual intent to hinder, delay or defraud" the Debtor's creditors. 11 U.S.C. § 548(a)(1)(A).

As before, the Court need not rely on any badges of fraud because the Defendants admitted such fraudulent intent. During the hearing on the Motion to convert, when testifying about the Debtor's interest in the Joint Venture, Jack Wood testified as follows:

> At that time, we had decided that we didn't want Julie in the joint venture. She wasn't contributing and she had gotten the lawsuit in Alabama had been finalized by the Supreme Court of Alabama ... .

Clearly, the transfer was made with the intent to defraud or hinder Gerstenecker's attempts to collect her soon to be finalized judgment. Like the transfer of the bank account funds, the transfer of the Debtor's interest in the Joint Venture was simply part of the plan conceived of by the Defendants to prevent Gerstenecker from collecting the debt owed to her by the Debtor.

The Trustee also met his burden of showing that these transfers were constructively

fraudulent. Like the bank account transfers, the Debtor received nothing for the transfer of her interest in the Joint Venture. The Debtor simply went from a 20% holder to an outsider with no interest in the Joint Venture. No consideration was paid by Defendants to the Debtor for this taking of her interest. Plus, as previously found, this transfer was made while the Debtor was insolvent. Finally, the Defendants failed to rebut the proof of fraudulent intent. Consequently, the Court finds that summary judgment should be granted in favor of the Trustee with respect to Count IV as to the transfer of the interest in the Joint Venture.

**Count V. Avoidance of the Bank Transfers under the Kentucky Uniform Voidable Transactions Act**

The Court now turns to Count V of the Complaint wherein the Trustee seeks to avoid the trasfers of the Bank Accounts under the Kentucky Uniform Voidable Transactions Act ("KYUVTA"). Analysis of this section was addressed in the discussion regarding Count I, *supra*.

Based upon that analysis, the Court finds that summary judgment should be granted in favor of the Trustee on Count V as well.

**Count VI.    Avoidance of the Transfer of the Business Interest Under KYUVTA**

Under the KYUVTA, a transfer is voidable as to a creditor whose claim arose prior to the transfer if: (1)(a) debtor did not receive reasonably equivalent value in exchange for the transfer and (b) the debtor was at the time or became insolvent as a result of the transfer; or (2) the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe the debtor was insolvent. KRS § 378A.050(1), (2).

As with the bank account transfers, the Trustee has met his burden with respect to the transfer of the Joint Venture and the KYUVTA. As found previously, and stated above, the Debtor

received nothing for the transfer of her 20% in the Joint Venture. Finding that the Debtor did not receive reasonably equivalent value in exchange for the interest in the Joint Venture is not a difficult conclusion to make when the Debtor received nothing for the transfer. Additionally, the solvency of the Debtor cannot be questioned when examining the Debtor's bankruptcy sworn schedules. Finally, this transfer of the Debtor's interest in the Joint Venture was made to insiders, family members of the Debtor. With these conclusions in mind, the Court finds that summary judgment should be granted in the Trustee's favor as to Count VI.

In the Defendants' Objection to the Motion for Summary Judgment, the Defendants make the argument that several of the facts relied upon by the Trustee are actually in dispute. The Defendants are incorrect in their assessment of these facts. The allegedly "disputed" facts were admitted to by the Defendants in their answer. While it is true that the Defendants moved to amend their answer, to remove their admissions, that motion to amend was denied by the Court by order entered October 12, 2021. At this point in time, those admissions are still valid and the Defendants are bound by their admissions. The Court finds that all of the "disputed" facts asserted by the Defendants have been either admitted to in their answer, testified to in the previous hearings, or found by the Court in previous rulings.

## CONCLUSION

The Trustee has met his burden of proving by a preponderance of the evidence each element of a preferential transfer under § 547(b) and voidable transfers under § 544(b), § 548, and KRS § 378A.050. Further, it has been conclusively established that Defendants have not met and cannot meet their burden of overcoming the undisputed facts or presenting any affirmative defenses to the transfers. As such, the Court will grant the Trustee's Motion for Partial Summary Judgment and will

enter judgment in the Trustee's favor and against Defendants as follows:

(a) Counts I, II, III, and IV in the amount of $47,701.28, the value of the Bank Transfers from the Closed Accounts;

(b) Counts III and VI in an amount equal to the value of Debtor's 20% interest in the Joint Venture;

(c) The value of the transfers be preserved for the estate;

The trial in this matter currently set for January 12, 2022, shall proceed as an evidentiary hearing solely on the issue of the value of the Debtor's 20% interest in the Joint Venture. A separate order will be entered in accordance with this Memorandum.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: December 7, 2021

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re:<br><br>JULIE MARIE WOOD<br><br>Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 18-32555 |

| | | |
|---|---|---|
| MICHAEL WHEATLEY,<br>          Plaintiff<br>v<br>JACK D. WOOD, JENNIFER D. WOOD, and<br>MARGARET WOOD<br>          Defendant | )<br>)<br>)<br>)<br>)<br>)<br>) | A. P. NO. 19-3041 |

## ORDER

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED AND ADJUDGED** that the Trustee's Motion for Partial Summary Judgment is **GRANTED** and judgment is granted in the Trustee's favor on Counts I, II, III, and IV in the amount of $47,701.28, the value of the bank account transfers.

IT IS FURTHER ORDERED AND ADJUDGED that the judgment is granted in the Trustee's favor with respect to Counts III and VI in an amount equal to the value of Debtor's 20% interest in the Joint Venture.

IT IS FURTHER ORDERED that the trial in this matter currently set for January 12, 2022, shall proceed as an evidentiary hearing solely on the issue of the value of the Debtor's 20% interest in the Joint Venture.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: December 7, 2021